## BILLMAN v. KROGER CO.

No. 10156.

United States Court of Appeals
Seventh Circuit.

Nov. 10, 1950.

James J. Stewart, James L. Murray and H. William Irwin, and Murray, Mannon, Fairchild & Stewart, all of Indianapolis, Ind., for appellant.

Harry L. Gause, Erle A. Kightlinger, and Armstrong & Gause, all of Indianapolis, Ind., for appellee.

Before KERNER, FINNEGAN, and LINDLEY, Circuit Judges.

KERNER, Circuit Judge.

This appeal is from a judgment for defendant entered on a verdict of a jury in a suit to recover for personal injuries suffered in a collision between an automobile and a parked truck.

Plaintiff bases his asserted right to reversal of the judgment and a new trial on the prejudicial conduct on the part of the trial judge who, he asserts, exhibited hostility to him and partiality to the defendant throughout the entire proceedings in the following respects: Conducting hostile cross-examination of him and his witnesses;

asking defense witnesses leading and suggestive questions; volunteering statements in evidence on behalf of defendant, some of which were inaccurate and irrelevant; making prejudicial remarks to his counsel in the presence of the jury; commenting, arguing and expressing opinions on controversial questions of fact; coercing or influencing the jury by commenting upon their numerical division in connection with their deliberations; and coercing or influencing the jury by hastening their consideration by evidencing surprise and impatience at their failure to promptly arrive at a verdict and by threatening to lock them up.

A study of the record discloses that many of plaintiff's objections to the conduct of the trial are well grounded and that the practical effect of the court's conduct was to direct a verdict in favor of defendant. For that reason we have examined the record with a view to ascertaining whether the court should have granted defendant's motion for a directed verdict filed at the close of plaintiff's evidence.

It is clear that substantial questions of fact were raised relating to defendant's negligence. There was conflict in the evidence as to whether the driver of the truck who parked it on the highway while he went for help when a rear tire blew out could have safely driven it a short distance farther to a place where there was evidence that he could have pulled it off the highway and onto a firm shoulder, whether he switched the various truck lights on before he left it, and as to the placing of the flares. However, from our study of the record we are convinced that the testimony of plaintiff himself disclosed that his own negligence was the proximate cause of the collision which caused his injuries. That being the case, the matter of defendant's negligence, which is in dispute, becomes immaterial.

Plaintiff testified that the accident occurred on a highway about two miles south of Shelbyville, Indiana, at 5:30 o'clock on the evening of January 12, 1948. It was dark and there was a slight fog, but visibility was good. Plaintiff had his lights on and thought he could see about 350 feet

ahead with them. As he rounded a curve about four-tenths of a mile from the scene of the accident he saw three lighted flares which he stated were directly in line in the middle of the highway. He knew the meaning of a flare in the highway. He testified that to him it meant "to have my car under control because there was something dangerous ahead," "I knew there was something wrong." He then reduced his speed from a little less than 50 miles an hour, and was driving about 30 or 35 miles an hour when he came up to the first flare. Although the road was straight for the half-mile or so from the point where he first saw the flares up to the parked trailer and there was nothing to obstruct his view for that distance, it was not until he was almost up to the first flare that he saw that there was a parked trailer-truck on the highway ahead of him. He put on his brakes immediately but was unable to stop in time to avoid running into it. He thought the first flare was from 40 to 60 feet back of the truck. He stated that there were no visible lights on the backend of the trailer and that it blended into the highway. He turned to the right in order to avoid running over the flares and struck the right rear of the trailer with the left front of his car, thus causing the injuries to himself for which the action was brought.

The two significant facts which emerge from this testimony are: (1) Plaintiff saw lighted flares ahead for a distance of at least four-tenths of a mile, and knew there was something wrong ahead; (2) he continued to drive his car at a speed of at least 30 and more likely 35 miles an hour until he reached the point where he could identify the obstruction against which the flares were intended to warn him.

Subsections (a) and (d) of the Indiana statute relating to speed regulations, § 47-2004, Burns' Indiana Statutes Annotated 1933, 1940 Replacement, provide:

"No person shall drive a vehicle on a highway at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing. In every event speed shall be so restricted as may be necessary to avoid colliding with any * * * other conveyance on * * * the highway in compliance with legal requirements and with the duty of all persons to use due care. * * *

"The driver of every vehicle shall, consistent with the requirements in subsection (a), drive at an appropriate reduced speed when * * * special hazards exist with respect to * * * other traffic or by reason of weather or highway conditions."

In Opple v. Ray, 208 Ind. 450, 459, 195 N.E. 81, 84, the court criticized the "hard-and-fast rule" theretofore stated in a number of decisions, "that one who operates a motorcar at night must equip his car with such lights, and proceed at such speed, and observe the way with such care, that he will see any dangerous obstruction in the highway, and that he must stop before collision and injury to himself under penalty of being chargeable with negligence contributory to his own injury," as basically unsound. In its place it stated 208 Ind. at p. 461, 195 N.E. at page 85 a rule which furnishes an execellent guide as to the measure of care required to avoid a charge of negligence, that "one who drives at night at a speed which will permit him to observe ordinary signals of danger and obstruction, which would ordinarily and naturally be seen by a reasonably prudent person in time to stop without injury, cannot rationally be charged with negligence contributing to a collision because he failed to see and avoid a collision with an object which a reasonably prudent person would not anticipate or expect to find in his path. And an automobile parked in the highway without lights must be considered such an object." And in Cushman Motor Delivery Co. v. McCabe, 219 Ind. 156, 173, 36 N.E.2d 769, 775, per Judge Swaim, the court stated, "A red light is the ordinary signal of danger to the motorist—a signal which all recognize and understand. A burning flare has also come to mean that there is some obstruction ahead."

Applying Indiana statute and case law to the facts disclosed by plaintiff's own testimony, we are convinced that he had ample warning from the flares that there

was some special hazard ahead, some object which would not ordinarily be there, and that, being thus put on notice of such hazard, it became his duty to proceed at such a reduced speed as would enable him to stop if necessary when he reached the first flare and ascertain what the danger was and whether or not he could proceed with safety.

Plaintiff's own testimony spelled out the defense of contributory negligence pleaded by defendant, and barred his right to recover for defendant's negligence, if any. In this situation a verdict for defendant should have been directed, hence it is unnecessary for us to discuss whether the court's conduct of the trial was unfair and prejudicial and constituted reversible error. Cf. Quercia v. United States, 289 U.S. 466, 53 S.Ct. 698, 77 L.Ed. 1321; United States v. Lee, 8 Cir., 107 F.2d 522, 528; American Motorist Ins. Co. v. Napoli, 5 Cir., 166 F.2d 24, 27; Martucci v. Brooklyn Children's Society, 2 Cir., 140 F.2d 732, 734.

The judgment of the District Court is affirmed.